```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA

          v.                          17 CR 641 (KMW)
                                      Sentence
JUXHIN ULI

              Defendant
------------------------------x
                                      New York, N.Y.
                                      October 30, 2018
                                      11:00 a.m.


Before:

                    HON. KIMBA M. WOOD
                                      District Judge


                         APPEARANCES

GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York
DREW SKINNER
    Assistant United States Attorney

RUHNKE & BARRETT
    Attorney for Defendant
DAVID A. RUHNKE
```

1                    (Case called)
2                    DEPUTY CLERK:  Would counsel please state their
3     appearances.
4                    MR. SKINNER:  Good morning, Judge.
5                    Drew Skinner for the government.
6                    THE COURT:  Good morning, Mr. Skinner.
7                    MR. RUHNKE:  Good morning, your Honor.
8                    I'm David Ruhnke, appearing for Mr. Uli who is present
9     with me at counsel table.
10                   THE COURT:  Could you restate your name?
11                   MR. RUHNKE:  David Ruhnke, R-U-H-N-K-E.
12                   THE COURT:  OK.  Good.  Thank you.
13                   We are here for the sentencing of Mr. Uli.  I would
14    like to begin by asking defense counsel, have you and your
15    client had an adequate opportunity to review the presentence
16    report?
17                   MR. RUHNKE:  We've had ample opportunity to review the
18    report, your Honor.
19                   THE COURT:  And do you wish any changes made to it?
20                   MR. RUHNKE:  The only issue we had to it was addressed
21    in my sentencing memorandum, which was a suggestion at least in
22    the presentence report that there was a lot of profit on his
23    behalf.
24                   THE COURT:  Yes.  I didn't know the amount of profit.
25                   MR. RUHNKE:  It was a total of $1,500.

|   |   |
|---|---|
| 1 | THE COURT: OK. |
| 2 | MR. RUHNKE: That was the only correction we saw. |
| 3 | THE COURT: All right. We will make that correction. |
| 4 | MR. RUHNKE: Thank you, your Honor. |
| 5 | THE COURT: Then at this point I will tell you that I |
| 6 | have reviewed all of the sentencing materials and all of the |
| 7 | material regarding Mr. Uli himself, but I would like to hear |
| 8 | from defense counsel, and if Mr. Uli wishes, I'd like to hear |
| 9 | from him. |
| 10 | MR. RUHNKE: Yes, ma'am. |
| 11 | Your Honor, I've been practicing long enough to |
| 12 | remember when there weren't guidelines, and obviously long |
| 13 | enough to remember and experience where we are now where the |
| 14 | guidelines have been basically taken off the mandatory track. |
| 15 | They are not only not mandatory, they are not even |
| 16 | presumptively correct or presumptively reasonable.  And this is |
| 17 | a case, I suggest, respectfully that makes it particularly |
| 18 | appropriate for the overall purposes of sentencing to be |
| 19 | satisfied, which is a sentence that is sufficient but not |
| 20 | greater than needed. |
| 21 | Mr. Uli is 43 years old.  He has no criminal |
| 22 | convictions.  There are some bad check, things that were |
| 23 | resolved without convictions, etc., and this is obviously his |
| 24 | first adult offense.  And I think the circumstances of this |
| 25 | offense are particularly relevant.  This is a drug offense, a |

1     narcotics distribution offense, and we look at those, and I
2     know the courts look at those with great seriousness.
3          But the factual setting is as follows:  Mr. Uli is a
4     self-employed owner of a construction business that now,
5     ironically, is doing quite well, and he is about to open, he
6     hopes, a restaurant, and continue to earn a good living and pay
7     his taxes.
8          At a bad time he was approached by an acquaintance who
9     turned out to be a government informant who wanted to know did
10    he know anybody who could sell him drugs.  Coincidentally, he
11    met somebody through his business who bragged about his ability
12    to buy and sell drugs, and he used his place of business as the
13    delivery point between these two individuals.  It happened
14    twice.  And that in sum and substance is his involvement
15         THE COURT:  Where did he get the drugs?  Where did he
16    obtain the narcotics?
17         MR. RUHNKE:  That he does -- one of the two
18    individuals brought the narcotics to the scene, and the second
19    individual collected the narcotics from the scene.  Mr. Uli
20    himself did not acquire the narcotics.  And I note the
21    government's safety valve motion in this case, and on the
22    public record I will say only that there were a number of
23    meetings where all of these circumstances were discussed which
24    resulted in the government's agreement that a safety valve
25    relief from any mandatory sentencing would be appropriate in

1    this case.  There is no information available or indication

2    that this was anything but a first-time mistake on his part.

3            So, the circumstances of this offense are themselves

4    unusual in the way we normally see drug cases that wind up

5    before a federal court for sentencing.  So the question we

6    circle back to is what is sufficient under these circumstances.

7            Mr. Uli is 43 years old, as I mentioned, is

8    self-employed and employs other people, employees whom he hires

9    on these jobs who depend upon him for their employment.

10           His wife, Floria, is with him in court this morning.

11   They have been married for almost 20 years, coming up 20 years.

12   She has written a letter to the Court expressing Mr. Uli's

13   importance, not only to her, but to their children.  And here I

14   will just simply reference there was a sealed submission to

15   your Honor regarding one of the children who has special needs,

16   and I will leave the discussion at that.  But his continued

17   presence in the household is important to that end.

18           He is a good husband, a good father, a respected

19   member of his community, which, again, is borne out by some of

20   the letters that we submitted on his behalf.  Theirs is a

21   marriage which can fairly be described as a partnership.  She

22   helps run some of the paperwork aspects of the family business,

23   and together they're a team for their children, including the

24   teenagers.  He has stepped up and talked to his teenage

25   children about what a mistake he made and where he is now

1     because of the mistake not trying to minimize, not trying to

2     blame anybody but the one person who made the wrong decision,

3     which is himself.

4              I've suggested, without patting myself on the back,

5     what I think would be a creative sentence here, which is to

6     sentence him to the one day of his arrest time served, and then

7     place him on supervised release on what amounts to

8     home-detention-kind-of-conditions until he can prove himself

9     capable, and maybe relaxing those as time goes on; but this

10    would allow him to care for his family, including the ten-year

11    old -- five-year old, I'm sorry.  This would allow him to

12    continue to support his family, to continue to employ the

13    individuals who depend upon him, and that that would be an

14    appropriate way, a sufficient sentence that is not greater

15    than.

16             Everybody comes before the Court situated differently.

17    There are people who come before the Court who have made a

18    conscious decision to become drug dealers because it's a lot of

19    money and it's a way of life.  This is not his way of life.

20    And unless your Honor has additional questions of me, I know

21    Mr. Uli does want to speak to the Court.

22             THE COURT:  I have only a couple of questions.

23             Looking at his financial condition, I see that he has

24    three vehicles:  A Jaguar, a Honda Odyssey, and a Dutch

25    Sprinter.  They are valuable enough that if two are sold, his

1  family could do quite well without him for awhile.

2              MR. RUHNKE:  But then they would be without --

3              THE COURT:  Why do they need three?

4              MR. RUHNKE:  Well, part of it is a business expense,

5  your Honor.  Oh, I understand your point that some money could

6  be realized from the sale of vehicles, but probably not a great

7  deal of money, certainly not over a long-term proposition, and

8  I don't know what we're talking about in terms of a sentence

9  or, I'll find out, obviously, but I don't think selling assets

10  at this point is going to provide a sufficient cushion to this

11  family.

12              THE COURT:  Thank you.

13              I'd be glad to hear from Mr. Uli.

14              THE DEFENDANT:  Good morning, your Honor.

15              MR. RUHNKE:  I'll move the microphone.

16              THE DEFENDANT:  If I can just make -- can I answer the

17  vehicle question?

18              THE COURT:  Yes.

19              THE DEFENDANT:  The Honda Odyssey, it's about $3,000 I

20  paid for it, the Jaguar is about four or five, and the Sprinter

21  is a work van.

22              THE COURT:  It's a what?

23              THE DEFENDANT:  It's a work van for the construction

24  company.  And my rent at home is close to $3,000.  So if I was

25  to sell all three vehicles, I'll pay three months' rent.

1           THE COURT:  Right.

2           THE DEFENDANT:  But I just wanted to address your

3  Honor and tell you that the mistake I've made, I was in a very

4  tough spot in my life, and it was the biggest mistake of my

5  life.  I have no other explanation for it, but I just want to

6  assure you that I will never put my family through anything

7  like that again, and I will never even think about doing a kind

8  of mistake like that again.  It's out of character and it's

9  definitely not who I am.

10          THE COURT:  Thank you.

11          THE DEFENDANT:  Thank you.

12          THE COURT:  Would the government like to be heard?

13          MR. SKINNER:  Unless the Court has any questions on

14 the substantive sentencing, the one thing is we will seek

15 forfeiture in this case.  I think it's permissible for the

16 Court to order forfeiture orally at the time of sentencing, and

17 then we can provide the Court with an order at a later date.  I

18 also -- the Court may know better than I do, but if it's

19 permissible to enter forfeiture in an amount to be determined

20 and we'll submit the correct amount to the Court.

21          THE COURT:  I've never had that happen.  It's my job

22 to announce forfeiture as part of the sentence at the

23 sentencing, so if you cannot give me a figure today, we can

24 adjourn the full sentencing or part of it just for forfeiture.

25          MR. SKINNER:  No, that's fine, Judge.  Then what we

1  would seek is the $1,500 in profit that the defendant earned
2  from these sales.
3              THE COURT:  All right.  That's all you would seek?
4              MR. SKINNER:  Judge, there is a legal basis for us to
5  seek the forfeiture of the -- and that's where it comes down to
6  the question is, is what actual money the defendant took in
7  when he sold these two kilograms of cocaine.  I think it's
8  above $30,000 on each of them, so that is the amount that I'd
9  want to know before we sought that number.
10             I don't want to inconvenience the Court and the
11 defendant with another sentencing proceeding on his substantive
12 sentence.
13             THE COURT:  Perhaps what we should do is, I will order
14 a sentencing down the road, a sentencing proceeding to deal
15 with forfeiture, but if the defendant does not need to be there
16 for me to announce the amount of forfeiture, then we will
17 cancel the conference.
18             MR. SKINNER:  That's fine.  If it's acceptable to the
19 Court, if the Court could at least announce today as part of
20 the sentencing that there will be a forfeiture.  And that way
21 if it is permissible not to have a number, we would be
22 comfortable that way also.
23             THE COURT:  All right.  I will do that also.
24             Mr. Uli, you present a very sad case in that this
25 crime was truly not necessary.  You have the money.  You have a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

good business. You did not have to do this. There are people who have to do this to keep their children eating, and for that reason, I don't believe that a sentence of time served is the right sentence, but I will go first to the Sentencing Guidelines and then to the 3553 factors.

Your total offense level is 21, and your Criminal History Category is I. You've had some brushes with the law, but you're still in Criminal History Category I, and the government has moved -- I'm not sure if you've did it in your papers. You've moved for safety valve?

MR. SKINNER: We do, Judge.

THE COURT: If I were sentencing your client under the Sentencing Guidelines, I would take into account safety valve relief.

Moving to the 3553 factors, the crime is very serious because it involved a large amount of cocaine. Two kilos is -- we have cases with larger amounts here, but that is a large amount of cocaine.

Moving to the defendant's character, he has been very enterprising in building up the business that his father started, and you're thinking of starting another business in Hastings-on-Hudson, a restaurant. I don't want to take you away from that life for very long because I want you to continue to prove that you can do well.

I appreciate that you've been a very good husband and

a good father. You're home at night. You're home for dinner. You work with the children. That's very much to your credit. I think that for individual deterrence, general deterrence and just punishment the following sentence is appropriate:

Mr. Uli, please stand for sentencing.

I sentence you to three months in custody taking into account the variance permitted by 18 U.S.C. 3553(a). You will be on supervised release for three years. During that time, I am going to remember that I was very lenient with you today, and if you are back having violated the terms of supervised release --

THE DEFENDANT: Never your Honor.

THE COURT: -- I'm not going to be lenient. Can I count on you?

THE DEFENDANT: Not happening.

THE COURT: OK. So that's three years of supervised release. I will give you the conditions later. No fine. But I will impose forfeiture in the amount that the government determines is correct. And you will have an opportunity to argue whether that is a correct number. And if you can't agree, I will decide that.

The special assessment of $100 is due immediately.

You may sit down while I read you the conditions of supervised release.

The standard and mandatory conditions will apply. In

addition, the following special conditions will apply:

The search condition. You must submit your person, residence, place of business, vehicle, and any property or electronic devices under your control to a search on the basis that the probation officer has reasonable suspicion that contraband or evidence of a violation of the conditions of your supervised release may be found.

The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds to revoke your supervised release. You must inform any other residents that the premises may be subject to search pursuant to this condition. You will be supervised by the district of residence.

Are there charges to be dismissed?

MR. SKINNER: If there are, we move to dismiss any open counts.

THE COURT: That's granted.

Any recommendation you would like to be made?

MR. RUHNKE: Yes, your Honor. We would ask to the extent that he be designated to an institution close by for the service of that relatively short sentence. And as probation notes, he's a good candidate for self-surrender. We ask that he be permitted to self-surrender to whatever institution is designated by the marshal or the Federal Bureau of Prisons.

THE COURT: All right. I take it, the government

agrees?

        MR. SKINNER: No objection to that.

        THE COURT: Mr. Uli, I will permit you to surrender yourself to the facility that they designate for you. If they don't designate a date, I would say that you should go three days after you receive the information on where you will be housed, and you should arrive at 10:00 a.m. at that facility. Do you have any questions?

        THE DEFENDANT: No, ma'am.

        THE COURT: Is there anything further before I read Mr. Uli his appeal rights?

        MR. RUHNKE: Not from us, your Honor.

        MR. SKINNER: Not from the government.

        THE COURT: Mr. Uli, I read everyone his appeal rights, and I'm reading yours now. You don't need to stand.

        You can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there is some other fundamental defect in the proceedings that was not waived by your guilty plea.

        You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law.

        With few exceptions, any notice of an appeal must be filed within 14 days of judgment being entered in your case.

        If you are not able to pay the cost of an appeal, you

IAUQULIs

1    may apply for leave to appeal in forma pauperis.
2             And if you request, the clerk of this Court will
3    prepare and file a notice of appeal on your behalf.
4             I will ask Mr. Ruhnke to describe to you what your
5    appeal rights would be.
6             Thank you very much, and good luck to you.
7             MR. RUHNKE:  Thank you, your Honor.
8             THE DEFENDANT:  Thank you, Judge.
9             (Adjourned)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25